United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 12, 2004**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

No. 02-41655

CARLTON GADDIS and LATANZA GADDIS, INDIVIDUALLY AND AS NEXT
FRIEND OF COURTLIN GADDIS, A MINOR; COURTLIN GADDIS, A MINOR,

Plaintiffs-Appellees,

versus

UNITED STATES OF AMERICA, ET AL.,

Defendants,

UNITED STATES OF AMERICA,

Defendant-Appellant.

Appeal from the United States District Court
For the Eastern District of Texas

Before KING, Chief Judge, JOLLY, HIGGINBOTHAM, DAVIS, JONES, SMITH,
WIENER, BARKSDALE, EMILIO M. GARZA, DeMOSS, BENAVIDES, STEWART,
DENNIS, CLEMENT, PRADO, and PICKERING, Circuit Judges.

DeMOSS, Circuit Judge:

We took this case *en banc* to consider whether guardian *ad
litem* fees could be taxed against the government in a Federal Tort
Claims Act ("FTCA") case, in light of ***Crawford Fitting Co. v. J.T.
Gibbons, Inc.***, 482 U.S. 437 (1987). For the reasons that follow,
we conclude that federal district courts may continue to choose to
tax guardian *ad litem* fees as court costs against nonprevailing
parties, including against the government in an FTCA case. We thus

AFFIRM the decision of the district court to tax guardian *ad litem*

fees against the government here.

## BACKGROUND

The panel, in ***Gaddis v. United States***, No. 02-41655, 2003 WL

21635308, at *1 & n.1 (5th Cir. July 10, 2003) (unpublished), gave

a concise statement of the facts and background, which we reproduce

below:

> Carlton and Latanza Gaddis were stopped at a street
> intersection when a postal employee drove his government
> vehicle into theirs. Latanza, who was pregnant,
> initially suffered minor discomfort, but a few weeks
> later she prematurely delivered their son, Courtlin, with
> serious birth defects. The Gaddises sued the United
> States under the Federal Tort Claims Act ("FTCA"), 28
> U.S.C. § 2671 *et seq.*, for negligence. They requested,
> and the district court appointed, a guardian *ad litem* for
> Courtlin.[1] After a bench trial, the court found the
> United States liable for Courtlin's injuries and awarded
> the Gaddises over $4 million in damages. The court also
> taxed as costs $46,299 in guardian *ad litem* fees against
> the government under Fed. R. Civ. P. 54(d)(1).

The Gaddis parents had moved for the appointment of George Bean

("Mr. Bean") as guardian *ad litem* for Courtlin to represent his

interests in the automobile accident litigation. The government

opposed such appointment as premature, arguing that there was no

allegation of a conflict of interest among the Gaddises nor of any

prejudice to Courtlin's interests. In reply, the Gaddis parents

---

[1] Mr. and Mrs. Gaddis, who also sued the United States for
loss of consortium with Courtlin, feared that an unexpected
conflict of interest with Courtlin might occur during the
litigation.

urged that Federal Rule of Civil Procedure 17(c)[2] authorizes the court appointment of a guardian *ad litem* in cases involving minors and that Courtlin should be appointed a guardian *ad litem* to ensure that no one take an unfair advantage in relation to him. The district court agreed with the Gaddis parents and appointed Mr. Bean as guardian *ad litem* "to represent the interests of the minor Plaintiff, COURTLIN GADDIS, in the [] litigation." The district court further ordered that "the fees charged for the *Ad Litem*'s services be reasonable and necessary for representation of the Minor" and that "the fees charged shall be taxed as court costs subject to approval by the Court."

After the bench trial concluded with a finding of government liability, Mr. Bean filed a motion for his guardian *ad litem* fees and requested they be charged against the government as costs

---

[2] Rule 17(c), **Infants or Incompetent Persons**, provides:

> Whenever an infant or incompetent person has a representative, such as a general guardian, committee, conservator, or other like fiduciary, the representative may sue or defend on behalf of the infant or incompetent person. An infant or incompetent person who does not have a duly appointed representative may sue by a next friend or by a guardian *ad litem*. The court shall appoint a guardian ad litem for an infant or incompetent person not otherwise represented in an action or shall make such other order as it deems proper for the protection of the infant or incompetent person.

Fed. R. Civ. P. 17(c).

3

pursuant to Federal Rule of Civil Procedure 54(d).[3] The government opposed the motion on several grounds. The government relied on *Crawford Fitting* for its claim that the district court lacked subject matter jurisdiction to award Mr. Bean guardian *ad litem* expenses as costs under Rule 54(d) at all, and specifically to tax such costs against the government because the government in 28 U.S.C. § 2412(a)[4] had only waived its sovereign immunity to pay

---

[3] Rule 54(d), **Costs; Attorneys' Fees**, provides in part:

**(1) Costs Other than Attorneys' Fees.** Except when express provision therefor is made either in a statute of the United States or in these rules, costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs; but costs against the United States, its officers, and agencies shall be imposed only to the extent permitted by law. Such costs may be taxed by the clerk on one day's notice. On motion served within 5 days thereafter, the action of the clerk may be reviewed by the court.

Fed. R. Civ. P. 54(d)(1).

[4] Section 2412(a)(1), under **Costs and fees**, provides:

Except as otherwise specifically provided by statute, a judgment for costs, as enumerated in section 1920 of this title, but not including the fees and expenses of attorneys, may be awarded to the prevailing party in any civil action brought by or against the United States or any agency or any official of the United States acting in his or her official capacity in any court having jurisdiction of such action. A judgment for costs when taxed against the United States shall, in an amount established by statute, court rule, or order, be limited to reimbursing in whole or in part the prevailing party for the costs incurred by such party in the litigation.

28 U.S.C.A. § 2412(a)(1) (West 2004). The government further contends that because the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b), §§ 2671-2680, does not include a provision

4

for costs as enumerated in 28 U.S.C. § 1920,[5] and guardian *ad litem* fees are not included in § 1920.  The government also contended that even if the court could award the guardian *ad litem* fees as costs, most of Mr. Bean's claimed expenses were for his legal work as an attorney on behalf of Courtlin, not for services provided as Courtlin's guardian *ad litem*.

---

regarding costs, § 2412(a)(1) is the applicable provision governing costs to be taxed against the nonprevailing government in an FTCA case.

[5] Section 1920, **Taxation of costs**, provides:

A judge or clerk of any court of the United States may tax as costs the following:

(1) Fees of the clerk and marshal;

(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and copies of papers necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree.

28 U.S.C.A. § 1920 (West 2004).

5

The district court then held a hearing to determine issues pertaining to the entry of judgment concerning Courtlin. During that hearing, the court fully considered the government's arguments regarding the taxation of guardian *ad litem* fees and determined that it was bound to follow our post-***Crawford Fitting*** precedents in ***Dickerson v. United States***, 280 F.3d 470, 478 (5th Cir. 2002); ***Lebron v. United States***, 279 F.3d 321, 332 (5th Cir. 2002); and ***Gibbs v. Gibbs***, 210 F.3d 491, 506-08 (5th Cir. 2000), which cases all allowed for the taxation of the prevailing party's guardian *ad litem* fees as costs under Rule 54(d), but not including fees attributable to any legal services performed by the guardian *ad litem*.[6] These three cases were decided after ***Crawford Fitting***, and the district court correctly pointed out that the ***Dickerson*** and ***Lebron*** cases both specifically involved the taxation of guardian *ad litem* fees against the government where the plaintiff had prevailed in an FTCA claim.

After determining that it could properly tax Mr. Bean's

---

[6] ***Dickerson v. United States***, 280 F.3d 470 (5th Cir. 2002); ***Lebron v. United States***, 279 F.3d 321 (5th Cir. 2002); and ***Gibbs v. Gibbs***, 210 F.3d 491 (5th Cir. 2000), all relied on and affirmed ***duPont v. Southern National Bank***, 771 F.2d 874 (5th Cir. 1985), a case decided before ***Crawford Fitting Co. v. J.T. Gibbons, Inc.***, 482 U.S. 437 (1987), where this Court held that the expenses of a guardian *ad litem* appointed by the court were properly taxable as costs pursuant to Rule 54(d). ***duPont***, 771 F.2d at 882. That is, such costs were allowed where the guardian *ad litem* was serving in his role as an officer of the court versus serving any attorney *ad litem* function. ***Id.***

guardian *ad litem* fees against the government, the district court proceeded to analyze Mr. Bean's expenses in this case – attempting to distinguish between Mr. Bean's time spent as Courtlin's guardian *ad litem* (taxable against the government as a cost) versus his time spent serving as a legal advisor to Courtlin (certainly entitled to be paid, but not chargeable against the government as a cost). After a thorough analysis, which took place at the hearing, the court disallowed $1687.50, which appeared to be in the nature of attorney's fees, and allowed a total of $46,299.00 as legitimate guardian *ad litem* fees.  In the final judgment, the district court concluded that "the United States shall pay, as a taxable cost of court, the Guardian *Ad Litem*'s fee in the amount of $46,299.00."

The government timely appealed the taxation of guardian *ad litem* fees only, and a panel of this Court, in a *per curiam* unpublished opinion, affirmed the award of costs.  We agreed to hear the case *en banc*.

## DISCUSSION

Here, the government seeks further review of the discrete legal issue of whether guardian *ad litem* fees are taxable costs at all, or are at least not taxable against the United States.  As the panel indicated, this is a pure question of law subject to *de novo* review.  *See* **Roe v. Tex. Dep't of Protective & Regulatory Servs.**, 299 F.3d 395, 400 (5th Cir. 2002).

**Whether a district court may tax guardian *ad litem* fees as costs**

7

**against the nonprevailing government in an FTCA action.**

Regarding this issue, the government made the same arguments on appeal as it did in the district court, and as it makes here to the *en banc* Court. First, the government claims the Supreme Court has ruled in **Crawford Fitting** that the costs allowed by Federal Rule of Civil Procedure 54(d) to a prevailing party in a federal proceeding are limited to those itemized in 28 U.S.C. § 1920, which does not include any provision relating to guardian *ad litem* fees. Second, the government submits that under Rule 54(d) and 28 U.S.C. § 2412(a)(1), costs may be levied against it, but only as enumerated in § 1920; that is, the government has waived none of its sovereign immunity as to costs not authorized by statute.

In **Crawford Fitting**, the Supreme Court explained that 28 U.S.C. § 1821[7] limits the amount of litigants' witness fees

---

[7] Section 1821, **Per diem and mileage generally; subsistence**, provides in part:

> (a)(1) Except as otherwise provided by law, a witness in attendance at any court of the United States, or before a United States Magistrate Judge, or before any person authorized to take his deposition pursuant to any rule or order of a court of the United States, shall be paid the fees and allowances provided by this section.
>
> (2) As used in this section, the term "court of the United States" includes, in addition to the courts listed in section 451 of this title, any court created by Act of Congress in a territory which is invested with any jurisdiction of a district court of the United States.
>
> (b) A witness shall be paid an attendance fee of $40 per day for each day's attendance. A witness shall also be paid the attendance fee for the time necessarily occupied

awardable, and § 1920 allows a court to tax such fees as costs only within those limits. 482 U.S. at 441-42. In the absence of statutory or contractual authorization for more generous payments, federal courts are constrained by the $30-per-day (now $40-per-day) cap when ordering one side to pay for the other's expert witnesses. *Id.* at 444-45. *Crawford Fitting* involved two cases of awards to prevailing parties that covered all the expenses reasonably incurred for their experts, bestowed under the authority of Rule 54(d) as costs. The Court rejected the excessive awards, concluding that "absent explicit statutory or contractual authorization for the taxation of the expenses of a litigant's witness as costs, federal courts are bound by the limitations set out in 28 U.S.C. § 1821 and § 1920." *Id.* at 445. In coming to that holding, the Supreme Court considered the interplay among Rule 54(d), § 1920, and § 1821(b):

> Petitioners argue that since § 1920 lists which expenses a court "may" tax as costs, that section only authorizes taxation of certain items. In their view, § 1920 does not preclude taxation of costs above and beyond the items listed, and more particularly, amounts in excess of the § 1821(b) fee. Thus, the discretion granted by Rule 54(d) is a separate source of power to tax as costs expenses not enumerated in § 1920. We think, however, that no reasonable reading of these

---

in going to and returning from the place of attendance at the beginning and end of such attendance or at any time during such attendance.

28 U.S.C.A. § 1821(a)-(b) (West 2004). The subsection (b) in effect at the time of *Crawford Fitting* provided for a $30 per diem cap; it was increased to $40 by amendment in 1990. *Id.* note.

provisions together can lead to this conclusion, for petitioners' view renders § 1920 superfluous. If Rule 54(d) grants courts discretion to tax whatever costs may seem appropriate, then § 1920, which enumerates the costs that may be taxed, serves no role whatsoever. We think the better view is that § 1920 defines the term "costs" as used in Rule 54(d). Section 1920 enumerates expenses that a federal court may tax as a cost under the discretionary authority found in Rule 54(d). It is phrased permissively because Rule 54(d) generally grants a federal court discretion to refuse to tax costs in favor of the prevailing party. One of the items enumerated in § 1920 is the witness fee, set by § 1821(b) at $30 per day.

We cannot accept an interpretation of Rule 54(d) that would render any of these specific statutory provisions entirely without meaning. Repeals by implication are not favored, and petitioners proffer the ultimate in implication, for Rule 54(d) and §§ 1920 and 1821 are not even inconsistent. We think that it is clear that in §§ 1920 and 1821, Congress comprehensively addressed the taxation of fees for litigants' witnesses. This conclusion is all the more compelling when we consider that § 1920(6) allows the taxation, as a cost, of the compensation of court-appointed expert witnesses. There is no provision that sets a limit on the compensation for court-appointed expert witnesses in the way that § 1821(b) sets a limit for litigants' witnesses. It is therefore clear that when Congress meant to set a limit on fees, it knew how to do so. We think that the inescapable effect of these sections in combination is that a federal court may tax expert witness fees in excess of the $30-per-day limit set out in § 1821(b) only when the witness is court-appointed. The discretion granted by Rule 54(d) is not a power to evade this specific congressional command. Rather, it is solely a power to decline to tax, as costs, the items enumerated in § 1920.

*Id.* at 441-42. We note that neither ***Crawford Fitting***, the opinions

of the two lower courts which were appealed in that case, nor any

of the briefs submitted makes any specific mention of the propriety

of taxing guardian *ad litem* fees as costs pursuant to Rule 54(d) or

10

otherwise.

The Supreme Court restated its holding from *Crawford Fitting* in *West Virginia University Hospitals, Inc. v. Casey*, 499 U.S. 83, 86 (1991), *superceded by statute as stated in Landgraf v. USI Film Products*, 511 U.S. 244, 251 (1994): "[W]e held that [§§ 1920 and 1821] define the full extent of a federal court's power to shift litigation costs absent express statutory authority to go further." The Court explained: "*Crawford Fitting* said that we would not lightly find an implied repeal of § 1821 *or* of § 1920, which it held to be an express limitation upon the types of costs which, absent other authority, may be shifted by federal courts." *Casey*, 499 U.S. at 87.

The precise issue in *Casey* was whether fees for services rendered by experts in civil rights litigation may be shifted to the nonprevailing party pursuant to § 1988, which permits the award of "a reasonable attorney's fee as part of the costs." *Id.* at 97-102; 42 U.S.C.A. § 1988(b) (West 2004). The Court ultimately held: "§ 1988 conveys no authority to shift expert fees. When experts appear at trial, they are of course eligible for the fee provided by § 1920 and § 1821." *Casey,* 499 U.S. at 102. Again, neither *Casey*, the opinion below, nor any of the briefs submitted makes any specific mention of the propriety of taxing guardian *ad litem* fees as costs pursuant to Rule 54(d) or otherwise. Moreover, Congress disagreed with the Court shortly after it provided its

11

interpretation of § 1988 as to attorney's fees in *Casey* and in 1991 amended § 1988 to explicitly provide courts the discretion to "include expert fees as part of the attorney's fee." 42 U.S.C.A. § 1988(c) (West 2004). The Court itself conceded that § 113 of the 1991 Civil Rights Act, which added subsection (c) to § 1988, was obviously drafted with *Casey*'s erroneous result in mind. *Landgraf*, 511 U.S. at 251.

This Court has certainly followed the specific holding of the Supreme Court in *Crawford Fitting*, as restated in *Casey*, as to the monetary cap on litigants' witness fees explicitly set by Congress in § 1821(b), which cannot be circumvented by federal courts under the sole authority of Rule 54(d).[8] In fact, this Court in *Coats v. Penrod Drilling Corp.*, 5 F.3d 877 (5th Cir. 1993), also stated: "Rule 54(d) of the Federal Rules of Civil Procedure provides for an award of costs 'to the prevailing party unless the court otherwise directs.' 28 U.S.C. § 1920 defines recoverable costs, and a district court may decline to award the costs listed in the statute but may not award costs omitted from the list." *Id.* at 891

---

[8] *See **United States ex rel. Wallace v. Flintco Inc.**, 143 F.3d 955, 972 (5th Cir. 1998) (applying **Crawford Fitting** and setting aside cross-awards of expert witness fees in excess of those provided for by § 1821); **Pedraza v. Jones**, 71 F.3d 194, 196 n.3 (5th Cir. 1995) (noting how cases that allowed expert witness fees in excess of the amount specified by § 1821 were overruled by **Crawford Fitting**); **Coats v. Penrod Drilling Corp.**, 5 F.3d 877, 891 (5th Cir. 1993) (citing **Crawford Fitting** to affirm the district court's decision not to award expert and witness fees).

(footnote and citation omitted).  However, in **Coats**, as in **Crawford Fitting** and **Casey**, again the taxation of guardian *ad litem* fees pursuant to Rule 54(d) or otherwise was not at issue.  Rather, we were considering the propriety of the costs of obtaining transcripts for several depositions necessarily obtained for use at trial, travel expenses, costs of "blow-ups," video technician fees, party witness fees, party expert fees, and costs of photocopies necessarily obtained for use in the case.  **Coats**, 5 F.3d at 891-92.

Here, we acknowledge the government's argument as it is inferred from the language of **Crawford Fitting** quoted above.  That is, because § 1920 is silent as to guardian *ad litem* fees, it does not include or define them as costs.  Therefore, such guardian *ad litem* fees are not taxable as costs against a nonprevailing party under Rule 54(d), particularly the government under § 2412(a), which expressly cross-references § 1920.

However, we easily reject the government's argument:  first, because Federal Rule Civil Procedure 17(c) constitutes the alternative express statutory authorization as required by **Crawford Fitting** to provide district courts with the inherent power and discretion to tax guardian *ad litem* fees as costs against the nonprevailing party, including the government in an FTCA case; second, because even if Rule 17(c) did not constitute the alternative express statutory authority as required by **Crawford Fitting**, we reasonably interpret the meaning of the phrase "court

13

appointed experts" in § 1920(6) to encompass guardians *ad litem* such that district courts can tax their compensation as costs per § 1920, including against the government in an FTCA case; and finally, because even in light of ***Crawford Fitting***, this Court's precedent dictates the propriety of district courts taxing guardian *ad litem* fees as costs, including against the government in an FTCA case.

## Rule 17(c) grants district courts the inherent authority to tax guardian *ad litem* fees as costs.

We start with Federal Rule of Civil Procedure 17(c), which is the source of the district court's authority to appoint Mr. Bean as guardian *ad litem* for the minor Courtlin Gaddis in this FTCA case. We note that the Supreme Court has never construed, interpreted, or applied Rule 17(c) in any opinion.[9]  The only historical note in

---

[9]    The Supreme Court has briefly mentioned guardians *ad litem* in the context of interpreting one federal statute, solely by analogy, in ***Rowland v. California Men's Colony, Unit II Men's Advisory Council***, 506 U.S. 194, 211-12 (1993), a case that considered whether an agency or organization could proceed as a civil party *in forma pauperis*, where the Court held that only natural persons, not artificial entities, could proceed *in forma pauperis* as civil litigants per 28 U.S.C. § 1915.  The Court recited in a footnote:

> On occasion, when a party is a minor or incompetent, or fails to cooperate with appointed counsel, or is for some other reason unable to file a timely affidavit, we will accept an affidavit from a guardian ad litem or an attorney.  By accepting such an affidavit, we bend the requirement that the affiant state that "he" is indigent and that "he" believes "he" is entitled to relief.  In such a case, however, it is clear that the party himself is a "person" within the meaning of § 1915.  The only question is whether Congress intended to deny § 1915

14

the published rules indicates that Rule 17(c) "is substantially former Equity Rule 70 (Suits by or Against Incompetents) with slight additions."[10]  Fed. R. Civ. P. 17 advisory committee's note.

It is clear in this Circuit that Rule 17(c) authorizes and mandates that district courts appoint a guardian *ad litem* in the situation where the interests of the minor's general representatives, the Gaddis parents here, may conflict with the interests of the person, their minor child Courtlin here, who might otherwise be represented by such general representatives.  ***Chrissy F. ex rel. Medley v. Miss. Dep't of Pub. Welfare***, 883 F.2d 25, 27 (5th Cir. 1989); ***Adelman ex rel. Adelman v. Graves***, 747 F.2d 986,

---

benefits to such a person who for some reason peculiar to him is disabled from filing an affidavit.  It is quite a different question whether Congress intended to extend § 1915 to entities that, by their nature, could never meet the statute's requirements.

*Id.* at 205 n.6.  This language in no way addresses the appropriate circumstances for a court to appoint guardians *ad litem* per Rule 17(c) nor how such guardians *ad litem* are to be paid.

[10] Equity Rule 70, **Suits by or Against Incompetents**, as it appeared in the eighth edition of the New Federal Equity Rules, provided:

Guardians *ad litem* to defend a suit may be appointed by the court, or by any judge thereof, for infants or other persons who are under guardianship, or otherwise incapable of suing for themselves.  All infants and other persons so incapable may sue by their guardians, if any, or by their *prochein ami*; subject, however, to such orders as the court or judge may direct for the protection of infants and other persons.

Fed. Equity R. 70 (8th ed. 1933).

15

988 (5th Cir. 1984) ("[T]he courts have consistently recognized that they have inherent power to appoint a guardian ad litem [or next friend] when it appears that the minor's [or incompetent person's] general representative has interests which may conflict with those of the person he is supposed to represent."(second and third alteration in original)(citation omitted). Judges may not "ignore or overlook such a fundamental requirement for the protection of infants [or incompetent persons]." *Adelman*, 747 F.2d at 989 (alteration in original) (citing *Roberts v. Ohio Cas. Ins. Co.*, 256 F.2d 35, 39 (5th Cir. 1958)). The need to protect the minor's or incompetent person's rights and interests in federal court proceedings is extremely vital; this is why "[i]t is within the district court's discretion to determine [the minor's] need for [guardian *ad litem*] representation, and who may best fill that need." *Adelman*, 747 F.2d at 989. This is also why, "as a matter of proper procedure, the court should usually appoint a guardian ad litem." *Id.* (citing *Roberts*, 256 F.2d at 39).

This power to appoint guardians *ad litem* pursuant to Rule 17(c) is important not only to ensure that the minor's rights and interests are fully protected in cases where the minor is otherwise represented and there may be conflicts of interest, but also to ensure that the minor has proper access to the federal judicial system at all. *Chrissy F.*, 883 F.2d at 27 (noting that when making this Rule 17(c) guardian *ad litem* appointment determination, "the

16

district court should consider that access to the courts by aggrieved persons should not be unduly limited"). Such fair access to the judicial system by minors and incompetent persons is enhanced if the district court exercises not only the power to appoint guardians *ad litem*, but also, as Rule 17(c) expressly directs, to "make such other order as it deems proper for the protection of the infant or incompetent person." Fed. R. Civ. P. 17(c). This additional power is necessarily required so the district court can effectuate its appointment of a competent, independent guardian *ad litem*.

It is precisely due to such legitimate and practical reasons that district courts must also have the inherent authority and discretion to tax guardian *ad litem* fees as costs against nonprevailing parties. *See* **Panitch v. State of Wisconsin**, 451 F. Supp. 132, 136 (E.D. Wis. 1978) ("Although Rule 17(c) is silent on the subject, we believe that an award for the reasonable value of services provided by the guardian ad litem may be taxed as costs against all of the defendants, jointly and severally."). The **Panitch** court ordered the nonprevailing defendants to pay the minor plaintiff's guardian *ad litem* fees as costs under Rule 17(c) "as a necessary consequence of the court's equitable responsibility to protect the interests of minor litigants who cannot protect themselves." **Id.** (citation omitted). Although we acknowledge Rule 17(c) does not specifically state that district courts may tax

17

guardian *ad litem* fees as costs, we find the **Panitch** court's reasoning persuasive as to the district court's inherent authority to tax guardian *ad litem* fees as costs under the express mandate of Rule 17(c).

Thus, a district court may tax guardian *ad litem* fees as costs per Rule 17(c) because we find Rule 17(c) to constitute the alternative express statutory authorization as required by **Crawford Fitting**. *See, e.g.,* **ICG Communications, Inc. v. Allegiance Telecom**, 211 F.R.D. 610, 613 (N.D. Cal. 2002) (noting each Federal Rule of Civil Procedure has the imprimatur of Congress such that Rule 26 constituted a law for purposes of 27 U.S.C. § 222). Likewise, the inherent powers and responsibility under Rule 17(c) to make such orders as the court deems proper also constitute the alternative express statutory authorization to tax guardian *ad litem* fees as costs to meet the requirements of § 2412(a)(1) and defeat any associated claim of sovereign immunity by the nonprevailing government in an FTCA case.[11] In the absence of any

_____

[11] The FTCA expressly states that: "The United States shall be liable, respecting the provisions of this title relating to tort claims, **in the same manner and to the same extent as a private individual under like circumstances**, but shall not be liable for interest prior to judgment or for punitive damages." 28 U.S.C. § 2674 (emphasis added); *see also* **id.** § 1346(b)(1) (describing exclusive jurisdiction of district courts for civil actions brought against the United States as defendant "for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a

18

Supreme Court holding or instruction otherwise, we therefore exercise our authority as an *en banc* Court to hold that under Rule 17(c), the district courts have inherent authority and discretion to determine:

(a) Whether a guardian *ad litem* needs to be appointed to protect the interests of the minor or incompetent person, and if so, who will be appointed to best serve in that capacity;

(b) Whether the guardian *ad litem* will be compensated for his services; and if so, the basis upon which the value of such services shall be determined, so long as the guardian *ad litem* is acting in his guardian *ad litem* capacity and not in any attorney *ad litem* capacity; and

(c) Whether the compensation payable to the guardian *ad litem* will be treated (1) as a court cost to be taxable against the nonprevailing party or (2) as an expense to be payable out of any funds recovered by or payable to the minor or incompetent person on whose behalf the guardian *ad litem* was appointed.

**Section 1920(6) grants district courts the statutory authority to tax guardian *ad litem* fees as costs against the nonprevailing government in an FTCA case.**

---

private person, would be liable to the claimant . . . .").

The Supreme Court discussed the broad nature and extent of the government's waiver of sovereign immunity under the FTCA in **United States v. Yellow Cab Co.**, 340 U.S. 543 (1951). There, the Court stated that "the [FTCA] waives the Government's immunity from suit in **sweeping** language" and "**unquestionably**." **Id.** at 547 (emphasis added). Moreover, the Court noted that because the Federal Rules of Civil Procedure apply to "all civil actions," the former language of the FTCA which referred specifically to the application of the Rules was omitted as unnecessary. **Id.** at 553 n.9. Thus, there is no question that FTCA actions are properly subject to the Rules. *See* **Simon v. United States**, 891 F.2d 1154, 1156 (5th Cir. 1990); **United States v. Acord**, 209 F.2d 709, 711 (10th Cir. 1954).

19

Alternatively, were Rule 17(c) not construed by the Supreme Court to constitute the alternative express statutory authority as required by *Crawford Fitting* to provide district courts with the inherent power and discretion to tax guardian *ad litem* fees as costs, this Court concludes that subsection (6) of § 1920 providing for "[c]ompensation of court appointed experts" can reasonably be read to include fees for services rendered by a guardian *ad litem* appointed by a court pursuant to Rule 17(c).

We have clearly stated that *Crawford Fitting* "limits judicial discretion with regard to the kind of expenses that may be recovered as costs; it does not, however, prevent courts from interpreting the meaning of the phrases used in § 1920." *West Wind Africa Line, Ltd. v. Corpus Christi Marine Servs. Co.*, 834 F.2d 1232, 1238 (5th Cir. 1988); *see also Cengr v. Fusibond Piping Sys., Inc.*, 135 F.3d 445, 454 (7th Cir. 1998) ("Under *Crawford* [*Fitting*], courts are allowed to interpret the meaning of the phrases used in § 1920."); *Alflex Corp. v. Underwriters Labs., Inc.*, 914 F.2d 175, 177 (9th Cir. 1990) (finding the court's interpretation of § 1920(1) "supported by recent decisions from the Fifth and the Seventh Circuits that have held that courts are free to interpret what constitutes taxable costs after *Crawford* [*Fitting*]"); *SK Hand Tool Corp. v. Dresser Indus., Inc.*, 852 F.2d 936, 944 (7th Cir. 1988) (agreeing with the Fifth Circuit and describing the court's authority to interpret the meaning of the phrases in § 1920,

20

despite *Crawford Fitting*).

In *West Wind*, we determined that even though § 1920 does not explicitly enumerate depositions in its list of costs, courts have properly interpreted § 1920(2) providing for "fees of the court reporter" and § 1920(4) providing for "fees for exemplification and copies of papers necessarily obtained for use in the case" as statutorily authorizing the taxation of the costs of original deposition transcripts and copies. 834 F.2d at 1238; *United States v. Kolesar*, 313 F.2d 835, 838-39 (5th Cir. 1963) (holding the cost of a deposition copy taxable against the government in an FTCA case as a matter of statutory construction under § 1920(2)); *see also Cengr*, 135 F.3d at 454 (finding deposition transcript expenses to be taxable costs as a matter of statutory construction under § 1920(2) as stenographic transcripts, and photocopying expenses authorized under § 1920(4) as exemplification fees); *Aflex Corp.*, 914 F.2d at 177 ("The cost of deposition copies is 'encompassed' by section 1920(2), and is therefore properly taxed under the *Crawford* [*Fitting*] holding[].");  *Maxwell v. Hapag-Lloyd Aktiengesellschaft, Hamburg*, 862 F.2d 767, 770 (9th Cir. 1988) (interpreting § 1920 and finding the costs of photographic materials used at trial encompassed by § 1920(4)'s allowance for "[f]ees for exemplification and copies of papers necessarily obtained for use in the case"); *S.K. Hand*, 852 F.2d at 944 (finding deposition transcript expenses to be costs encompassed by § 1920(2)); Federal

21

Procedure, Lawyer's Edition § 26:54 (2003) ("Even though 28 U.S.C.A. § 1920 does not specifically mention depositions, the Supreme Court's *Crawford Fitting* decision does not preclude courts from finding that deposition transcripts are authorized by § 1920, as the Supreme Court did not prevent courts from interpreting the meaning of the phrases used in § 1920.") (footnote omitted). Also, section 1920(1)'s phrase "[f]ees of the clerk and marshal" has been interpreted by the Ninth Circuit to include private process servers' fees as taxable costs because the service of summonses and subpoenas is now done almost exclusively by private parties employed for that purpose, not the U.S. Marshal, even though there is no express provision authorizing the payment of private process servers in § 1920. *Aflex Corp.*, 914 F.2d at 178.

Similarly, even though § 1920 does not specifically mention guardian *ad litem* fees in its list of costs, a guardian *ad litem* appointed by a court pursuant to Rule 17(c) can be reasonably interpreted as a court appointed expert under § 1920(6).[12] The guardian *ad litem* is an officer of the court with "full responsibility to assist the court to secure a just, speedy, and inexpensive determination of the action." *Noe v. True*, 507 F.2d 9,

---

[12] We note that at least one district court, after *Crawford Fitting* was decided, has found the fees and expenses of a guardian *ad litem* taxable as costs specifically under § 1920 together with Rule 54(d), although the court declined to name under which provision of § 1920 guardian *ad litem* fees were included. *Allstate Ins. Co., Inc. v. Jones*, 763 F. Supp. 1101, 1102 (M.D. Ala. 1991).

22

12 (6th Cir. 1974) (internal quotations and citation omitted). The guardian *ad litem*'s special duty is to submit to the court for its consideration and decision every question involving the statutory and constitutional rights of the minor that may be affected by the action. *See **Chrissy F.***, 883 F.2d at 27 (noting how the appointment of guardians *ad litem* alleviate the risk of the minor party becoming "a pawn to be manipulated on a chess board larger than his own case") (citation omitted). Guardians *ad litem* thus perform independent functions that are integral and essential to the judicial process. *See **Cok v. Cosentino***, 876 F.2d 1, 3 (1st Cir. 1989) (finding guardians *ad litem* are entitled to quasi-judicial immunity because of same).

Therefore, guardians *ad litem* appointed by the court reasonably serve as experts in the sense that they liaise with the court and are charged with the important duty of providing their insight as to how the judicial process is or is not comporting with the best interests of the minor or incompetent person involved. While there is some indication in the legislative history that court appointed expert as used in § 1920(6) refers to a court appointed expert as appointed pursuant to Federal Rule of Evidence 706,[13] the plain statutory language of § 1920(6) does not so

---

[13] *See* H.R. Rep. 95-1687, at 12 (1978), *reprinted in* 1978 U.S.C.C.A.N. 4652, 4664. Prior to the 1978 amendment of 28 U.S.C. § 1920, which added the entirety of subsection (6), there was no specific subsection that dealt with either interpreters or court appointed experts. The 1978 amendment was passed as part of the

narrowly limit the interpretation of court appointed expert. This *en banc* Court is thus not constrained to so narrowly interpret the category of court appointed expert. Therefore, we find that the court appointment of a guardian *ad litem* pursuant to Rule 17(c) clearly falls within the reasonable scope of § 1920(6)'s authorization for courts to tax the costs of "court appointed experts."[14] This finding also defeats any claim of sovereign immunity by the government because § 2412(a)(1) expressly provides that § 1920 costs are taxable against the nonprevailing government.[15]

---

Court Interpreters Act, so the language about Federal Rule of Evidence 706 governing what a "court appointed expert" is, while located in the legislative history, seems to be an afterthought, especially considering that the crux of the House report is directed toward the need for and process of appointing and budgeting for court language interpreters, not other court appointed experts. The report also indicates that the original impetus for the Court Interpreters Act was the Sixth Circuit's decision in *United States ex rel. Negron v. New York*, 434 F.2d 386, 390-91 (6th Cir. 1970), which held that the Sixth Amendment requires that non-English-speaking criminal defendants be informed of their right to simultaneous interpretation of proceedings at the government's expense. H.R. Rep. 95-1687, at 3 (1978), *reprinted in* 1978 U.S.C.C.A.N. 4652, 4653-54. There is no such historic basis given for why costs of court appointed experts should be allowed, only the abrupt one-sentence reference to Rule 706's application.

[14] Even *West Virginia University Hospitals, Inc. v. Casey*, 499 U.S. 83 (1991), which restated the holding of *Crawford Fitting*, seems to condone the practice of courts interpreting the language of the categories of expenses listed in § 1920. *Id.* at 87 (noting how no subsection of § 1920 could be "*reasonably read* to include fees for services rendered by an expert employed by a party in a nontestimonial, advisory capacity") (emphasis added).

[15] We again note the sweeping and unquestionable waiver of sovereign immunity by the government under the FTCA. *Yellow Cab*,

**This Circuit's post-*Crawford Fitting* precedent provides for the taxation of guardian *ad litem* fees as costs against the government in an FTCA case.**

Alternatively, were guardian *ad litem* fees not construed by the Supreme Court to be reasonably included in § 1920's list of taxable costs, this Court concludes that our post-***Crawford Fitting*** precedent[16] dictates the continued propriety of district courts to tax guardian *ad litem* fees as costs against nonprevailing parties, including the government in an FTCA case. While we recognize the underlying treatment the Supreme Court gave to the interplay between Rule 54(d) and § 1920 in ***Crawford Fitting***, we are reluctant to and thus do not apply any such proscription here to the taxation of guardian *ad litem* fees as costs against the government in an FTCA case where the plaintiffs prevailed. We decline to read ***Crawford Fitting*** as restricting us in this case for the following reasons:

---

340 U.S. at 547. We also note that the Court quoted from the text of the statutory provision which ultimately became the FTCA: "Costs shall be allowed in all courts to the successful claimant to the same extent as if the United States were a private litigant, except that such costs shall not include attorneys' fees." *Id.* at 547 n.4. Although this language was removed when that provision was reenacted as the present FTCA in 1948, the Court made clear that "[w]e rely on the meaning of the language in the original Act and read the revised language as carrying it out." *Id.* Thus, we properly construe the plain meaning of "court appointed expert" in § 1920(6) as an enumerated cost with the government's broad waiver of sovereign immunity in mind.

[16] ***Dickerson***, 280 F.3d at 478; ***Lebron***, 279 F.3d at 332; ***Gibbs***, 210 F.3d at 506-08.

(a) No court in this Circuit ever has read ***Crawford Fitting*** to disallow the taxation of guardian *ad litem* fees against nonprevailing parties, including the government in FTCA cases;

(b) In addition to the precedents in this Circuit, each other circuit that has spoken on whether guardian *ad litem* fees can be taxed as court costs, either before or after ***Crawford Fitting*** – including the Fourth, Eighth, Tenth, and D.C. Circuits – has agreed that they can[17];

(c) Several district courts, including those in the Seventh and Eleventh Circuits, have also agreed that guardian *ad litem* fees can be taxed as costs[18];

---

[17] ***Hull v. United States***, 53 F.3d 1125, 1128-29 (10th Cir. 1995) (upholding taxation of guardian *ad litem* fees as costs against nonprevailing government in an FTCA case under Rule 54(d)) (post-***Crawford Fitting***); ***Kollsman v. Cohen***, 996 F.2d 702, 706 (4th Cir. 1993) (remanding for the district court to determine which costs were attributable to role of guardian *ad litem* versus attorney *ad litem* and to charge them against nonprevailing party pursuant to court's authority under Rule 54(d)) (post-***Crawford Fitting***); ***Schneider v. Lockheed Aircraft Corp.***, 658 F.2d 835, 854 (D.C. Cir. 1981) (holding the district court properly allowed guardian *ad litem* fees to be taxed as costs) (pre-***Crawford Fitting***), *abrogated on other grounds*, ***Duggan v. Keto,*** 554 A.2d 1126, 1139-40 (D.C. 1989); ***Franz v. Buder***, 38 F.2d 605, 606 (8th Cir. 1930) (allowing taxation of guardian *ad litem* fees as costs pursuant to Federal Equity Rule 70) (pre-***Crawford Fitting***).

[18] ***Calva-Cerqueira v. United States***, 281 F. Supp. 2d 279, 301 (D.D.C. 2003) (allowing taxation of guardian *ad litem* expenses as costs against the nonprevailing government in an FTCA action pursuant to Rule 54(d)) (post-***Crawford Fitting***); ***Jones***, 763 F. Supp. at 1102 (allowing prevailing party to recover fees and expenses of guardian *ad litem* as taxable costs pursuant to § 1920 and Rule 54(d)) (post-***Crawford Fitting***); ***United States v. 1,197.29 Acres of Land, More or Less, Situate in Butler County, State of Kan.***, 759 F. Supp. 728, 735 (D. Kan. 1991) ("The court appointed guardian *ad litem* is entitled to a reasonable fee for his services in this action, to be set by the court and taxed as costs.") (post-***Crawford Fitting***); ***United States v. Certain Lots in City of Virginia Beach, Va. Known as Lots Eighteen (18) and Nineteen (19), in Block Three (3)***, 657 F. Supp. 1062, 1066 (E.D. Va. 1987) (taxing

(d) Neither the term "guardian *ad litem*" nor the phrase "guardian *ad litem* fees" appears anywhere in the Supreme Court's decision in **Crawford Fitting**, nor in any brief submitted to the Supreme Court in **Crawford Fitting**, nor in the opinions of either of the two cases from the Fifth Circuit considered by the Supreme Court in **Crawford Fitting**;

(e) We have found no Supreme Court opinion that addresses in any way the propriety of charging guardian *ad litem* fees as costs to be paid by the nonprevailing party in any proceeding in federal court;

(f) Finally, the practice of assessing guardian *ad litem* fees as costs against a nonprevailing party is clearly recognized by state courts applying their respective state statutes and rules governing the appointment and payment of guardians *ad litem*.[19]

For these reasons we conclude that the Supreme Court did not have the subject of guardian *ad litem* fees before it in rendering its opinion in **Crawford Fitting**; and because of the wide and deep precedents in this Circuit and other federal courts, we are not obligated to extend the language of **Crawford Fitting** to overrule a

---

guardian *ad litem* fees as court costs against nonprevailing United States) (pre-**Crawford Fitting**); **Panitch v. State of Wisconsin**, 451 F. Supp. 132, 136 (E.D. Wis. 1978) (taxing guardian *ad litem* fees as costs against all nonprevailing parties pursuant to Rule 17(c), though the Rule is "silent on the subject") (pre-**Crawford Fitting**).

[19] *See, e.g.*, Ala. R. Civ. P. 17(d) (West 2003); 755 Ill. Comp. Stat. Ann. 5/27-4 (West 2004); Mich. Comp. Laws Ann. § 600.2045 (West 2004); N.C. Gen. Stat. § 1A-1(b)(2) (2004) (codifying N.C. R. Civ. P. 17); Tex. R. Civ. P. 173 (Vernon 2003); 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1570, at 506 (2d ed. 1990)(noting how the law of several states provides for the taxation of guardian *ad litem* fees as costs).

practice that has been widely accepted as fair and proper in the absence of express language from the Supreme Court requiring that change.

Overall, we thus hold that district courts retain the discretion to award guardian *ad litem* fees as court costs and assess them against nonprevailing parties, including the government in an FTCA case.[20]

## Whether the district court here appropriately assessed the award of guardian *ad litem* fees.

District courts have broad discretion in determining the appropriateness of an award of costs. *Dickerson*, 280 F.3d at 478 (citing *Gibbs*, 210 F.3d at 500). We review a district court's award or denial of costs, including guardian *ad litem* fees, for an abuse of discretion. *Dickerson*, 280 F.3d at 478 (citations

---

[20] This Court notes that district courts sitting in diversity can look to the applicable state statutes governing the appointment and payment of guardians *ad litem*, instead of Rules 17(c) and 54(d), and § 1920. *See, e.g., Kollsman*, 996 F.2d at 705 n.2 (correcting district court's application of the Virginia *guardian ad litem* statutes and applying Rules 17(c) and 54(d) instead where district court had erred in finding diversity jurisdiction); *duPont*, 771 F.2d at 882 n.6 (noting that applicable Texas law regarding taxation of guardian *ad litem* fees as costs could apply in diversity case); *Mulholland v. Schneider Serv. Co., Inc.*, 661 F.2d 708, 712 (8th Cir. 1981) (applying Missouri statute regarding costs of defendant guardian *ad litem* in diversity case). *But see Miron v. APCO Corp.*, 289 F. Supp. 915, 916 (E.D. Wis. 1968) (applying Rule 54(d) discretion to not award guardian *ad litem* fees in a diversity case instead of the Wisconsin statute that would have required such award).

omitted).  "[W]here the same person acts in the capacities as both a minor's guardian *ad litem* and as his attorney *ad litem*, only the person's expenses in the former role are taxable as costs under Fed. R. Civ. P. 54(d)." ***Id.*** (quoting ***Gibbs***, 210 F.3d at 506).

Here, the district court underwent a thorough expense-by-expense determination as to which of Mr. Bean's fees were in the nature of legal services.  The court found that certain of Mr. Bean's case law and statutory research and the drafting of his motion for fees were not properly chargeable and disallowed them as costs.  We conclude the district court did not abuse its broad discretion to determine the appropriate amount of costs to be awarded to Mr. Bean.

## CONCLUSION

Having carefully reviewed the record of this case and the parties' respective briefing and arguments, for the reasons set forth above, we AFFIRM the decision of the district court to award the court appointed guardian *ad litem* his fees as a court cost chargeable against the nonprevailing government in this FTCA case. We also AFFIRM the amount of guardian *ad litem* fees awarded.

**AFFIRMED.**

29

KING, Chief Judge, dissenting:


    I respectfully dissent.  For the reasons cogently explained in Parts II.A-B and III of Judge Smith's dissenting opinion, I would hold that guardian ad litem fees cannot be taxed as costs of court under the authority of Rule 54(d) because they are not enumerated in 28 U.S.C. § 1920.  See Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 441-42 (1987).  As to whether Rule 17 provides a separate source of authority, it could well be that the power to appoint a guardian ad litem carries with it an inherent power to order payment: out of the award, out of some res before the court, from the parents, or possibly from another private party before the court; the bounds of the district court's authority in such practical matters are difficult to mark.  But, whatever may be true as regards the liability of a private litigant, Rule 17 does not (and arguably could not) provide the clear and explicit waiver of sovereign immunity that would permit an order directed at the government, which is the issue in today's case.  See, e.g., United States v. Nordic Village, Inc., 503 U.S. 30, 33-34 (1992); cf. 28 U.S.C. § 2412(a)(1).

30

SMITH, dissenting, joined by JOLLY, EMILIO M. GARZA, BENAVIDES, and PRADO:

In an act of Orwellian doublethink,[21] the majority concludes that although "Rule 17(c) does not specifically state" that guardian *ad litem* fees may be taxed as costs, it nevertheless provides "express statutory authorization" for that result. *Compare* Maj. Op. at 18 *with id.* at 13, 18.[22] Emboldened by that cogent insight, the majority then embarks on a broad survey of legal fictions, highlighted by an impliedly explicit waiver of sovereign immunity and the discovery that a statute has binding force despite its repeal in 1948.

As if sitting in Congress, the majority is ultimately able to agree on nothing more than a result: Guardian *ad litem* fees may be taxed as costs against the government despite sovereign immunity and despite *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437 (1987). The doctrinal basis for that result is so illusory, however, that the majority feels compelled to insulate itself in layer upon layer of "alternative" holdings. As a result, the true basis for today's decision remains a mysterySSeven to the majority that wrought it.

The unescapable reality is that the federal rules and statutes fail to provide that *ad litem* fees may be taxed as costs, and the only other authority for that proposition, *duPont v. S. Nat'l Bank*, 771 F.2d 874 (5th Cir. 1985), fails to survive *Crawford Fitting*. Because the majority is unable to accept the policy implications of that result, it boldly infers the existence of a power that Congress has not yet seen fit to provide, then brazenly declares that it is "expressly" and "specifically" provided for in rules and statutes that are entirely silent on the subject. Such an opinion can only be the product of a majority that is more confident in its result than in its reasoning, so I respectfully dissent.

I.

In its first and least convincing holding, the majority accepts the argument that *Crawford Fitting* implicitly overrules *duPont*, so the majority agrees that it is therefore necessary to find a rule or statute that expressly authorizes

---

[21] "*Doublethink* means the power of holding two contradictory beliefs in one's mind simultaneously, and accepting both of them . . . . The process has to be conscious, or it would not be carried out with sufficient precision, but it also has to be unconscious, or it would bring with it a feeling of falsity and hence of guilt." G. Orwell, *Nineteen Eighty-Four* 176 (1949).

[22] This is not the first time an en banc majority of this court has reached such a perplexing result. *See Kelly v. Lee's Old Fashioned Hamburgers, Inc.*, 908 F.2d 1218, 1222 (5th Cir. 1990) (en banc) (Smith, J., dissenting) ("[T]he presence of the word 'express' should be enough of a clue that that word, rather than the word 'implied,' is what in fact was meant in the promulgation of [Rule 54(b)].").

the taxation of *ad litem* fees as costs.[23] Faced with that challenge, the majority holds that the power to tax costs *should* be expressly enumerated in rule 17(c), so the majority accordingly findsSSnotwithstanding the text of the ruleSSthat it is expressly enumerated.[24]

As I will demonstrate, the majority's reasoning is severely flawed. It is no exaggeration to observe that the majority (1) ignores the plain meaning of some of the most elementary words in the English language; (2) relies on a long-since repealed waiver of immunity; (3) gives the federal rules an impermissibly broad mandate; and (4) then inexplicably refuses to remand for application of its newly-drafted rules.

### A.

The majority finds its "express authorization" in two parts of rule 17(c): first, in the language that provides for the appointment of a guardian *ad litem*; and second, in the language that allows the court to issue other orders for the protection of the minor. *Cf.* FED. R. CIV. P. 17(c). I address those claims in turn.

### 1.

It is not surprising that the meaning of the term "express" has changed little since 1990, when this court decided *Kelly* and first begat the concept of an impliedly-express statement. Then, as now, the term "express" meant "directly and distinctly stated or expressed rather than implied or left to inference." WEBSTER'S THIRD NEW INT'L DICTIONARY 803 (Merriam-Webster 1986).[25] It is, to put it mildly, "the very opposite of 'implied.'" *Kelly*, 908 F.2d at 1222 (Smith, J., dissenting).

Because rule 17(c) makes no mention of either the taxation of costs or the payment of *ad litem* fees, there is no sense in which it "expressly" provides that a guardian's fees may be taxed as costs. If the power to tax such fees as costs exists somewhere within rule 17(c), it can only be as an implicit component of the district court's authority to appoint a guardian. As a result, the majority's claim that rule 17(c) contains "express statutory authorization" for the taxation of *ad litem* fees as costs is patently false.[26]

---

[23] *See Crawford Fitting*, 482 U.S. at 445 (requiring "explicit statutory . . . authorization" for the taxation of costs not enumerated in 28 U.S.C. § 1920(6)).

[24] *See* Maj. Op. at 18 (stating that "[i]t is precisely due to such legitimate and practical reasons that district courts must also have the inherent authority and discretion to tax guardian *ad litem* fees as costs against nonprevailing parties," and relying on a decision that describes rule 17(c) as "silent on the subject").

[25] *See also* BLACK'S LAW DICTIONARY 601 (7th ed. 1999) ("*express*, adj. Clearly and unmistakably communicated; directly stated."); MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 645 (Merriam-Webster 1998) ("1a: directly, firmly, and explicitly stated. b: EXACT, PRECISE.")

[26] *Crawford Fitting*, 482 U.S. at 445, speaks in terms of "explicit" authority. "Explicit" means "characterized by full clear expression : being without vagueness or ambiguity : leaving

This flaw in the majority's argument becomes all the more glaring when rule 17(c) is compared with rule 53, which governs the appointment and compensation of masters. *See* FED. R. CIV. P. 53. The rules committee knows how to be explicit when it wishes to be, as rule 53 makes abundantly plain.

The newly revised rule 53(a)(3) provides that "[i]n appointing a master, the court must consider the fairness of imposing the likely expenses on the parties." FED. R. CIV. P. 53-(a)(3) (West 2004).[27] Rule 53(h), by its own title, expressly addresses the "compensation" of masters. Subsection (h)(1) provides that "[t]he court must fix the master's compensation before or after judgment on the basis and terms stated in the order of appointment." FED. R. CIV. P. 53(h)(1). Subsection (h)(2) further specifies that the master's compensation may be paid by either party or both, or from a fund or subject matter of the action within the court's control. FED. R. CIV. P. 53(h)(2).

Thus, it is fair to say that rule 53's express

---

nothing implied." WEBSTER'S THIRD NEW INT'L DICTIONARY 801 (Merriam-Webster 1986). The power identified by the district court no more fits this definition than it does that of the word "express."

[27] Before its revision, rule 53(a)SSwhich was titled "Appointment and Compensation"SSprovided that "[t]he compensation to be allowed to a master shall be fixed by the court, and shall be charged upon such of the parties . . . as the court may direct." FED. R. CIV. P. 53(a) (West 2003).

provisions dealing with both the appointment *and* the compensation of special masters constitute "explicit" authorization of the kind contemplated in *Crawford Fitting*. Rule 17(c), in contrast, provides only for the appointment of guardians *ad litem*. It says nothing whatsoever about the means by which an appointed guardian is to be compensated and, accordingly, does not contain the "explicit statutory authorization" the majority needs to reach its result.

Ironically, this point is further illustrated by the majority's advocacy of one of its "alternative" holdings. In arguing that *Crawford Fitting* is inapposite here, the majority claims that the federal rules are similar to state laws that provide for the compensation of guardians *ad litem*. *See* Maj. Op. at 28 & n.19. The critical difference, however, between federal law and the state laws relied on by the majority, is that the latter all specifically and unambiguously provide that guardian *ad litem* fees may be taxed as costs.

For example, the majority cites Alabama Rule of Civil Procedure 17(d). Much like federal rule 17, Alabama's rule 17(c) provides that a district court "shall appoint a guardian ad litem (1) for a minor defendant, or (2) for an incompetent person not otherwise represented in an action." ALA. R. CIV. P. 17(c). Unlike the federal rule, however, Alabama's rule also includes subpart (d), which provides:

> In all cases in which a guardian ad litem is required, the court must ascertain a reasonable fee or compensation to be allowed and paid to such guardian ad litem for services

rendered in such cause, to be taxed as a part of the costs in such action, and which is to be paid when collected as other costs in the action, to such guardian ad litem.

ALA. R. CIV. P. 17(d) (cited in the Maj. Op. at 28 n.19).

Mississippi's rules are similar. As with the federal and Alabama rules, Mississippi has a rule 17(c) that provides for the appointment of a guardian *ad litem* for unrepresented minors. MISS. R. CIV. P. 17(c). Just as in Alabama, but unlike the federal rule, the appointment provision is immediately followed by a section that addresses the compensation of guardians:

In all cases in which a guardian ad litem is required, the court must ascertain a reasonable fee or compensation to be allowed and paid to such guardian ad litem for his service rendered in such cause, to be taxed as a part of the cost in such action.

MISS. R. CIV. P. 17(d).[28]

---

[28] *See also* N.C. R. CIV. P. 17(b) (providing that the court "may appoint some discreet person to act as guardian ad litem . . . and fix and tax his fee as part of the costs"); TENN. R. CIV. P. 17.03 ("The court may in its discretion allow the guardian ad litem a reasonable fee for services, to be taxed as costs."); TEX. R. CIV. P. 173 ("the court shall appoint a guardian ad litem for such person and shall allow him a reasonable fee for his services to be taxed as a part of the costs."). Further examples can be found in part III of this dissent, addressing the majority's second

If the similarly worded state rules 17(c) already "expressly" provided for that result, these provisions would be wholly extraneous. The fact is that they are not. No matter how much the majority thinks the practice in federal courts *should* be the same as in these states, rule 17(c) provides only for the *appointment* of guardians *ad litem*, and there is no commensurate federal rule or statute specifying the manner in which their fees are to be paid. If that omission is bad policy, the power to craft a solution lies solely in the hands of Congress and the drafters of the federal rules, not simply in the abusive "exercise [of] our authority as an *en banc* Court." *Cf.* Maj. Op. at 20.

2.

Having created for the district courts, out of whole cloth, the "inherent authority" to tax *ad litem* fees as costs, the next step in the majority's linguistic putsch is to find a way to place that power into the text of the federal rules. *Cf.* Maj. Op. at 17. The majority does this by seizing on rule 17(c)'s provision that the district courts shall "make such other order as it deems proper for the protection of the infant or incompetent person." *Id.* According to the majority, "[t]his additional power is necessarily required so the district court can effectuate its appointment of a competent, independent guardian *ad litem*." *Id.*

That argument is premised on a selective quotation of rule 17(c). The full sentence relied on by the majority provides:

---

"alternative" to its main holding.

34

The court shall appoint a guardian ad litem for an infant or incompetent person not otherwise represented in an action *or* shall make such other order as it deems proper for the protection of the infant or incompetent person.

FED. R. CIV. P. 17(c) (emphasis added). Contrary to the majority's understanding, the plain meaning of this passage is that rule 17(c) affords the district courts a choice between appointing an *ad litem* and issuing other orders for the protection of the minor; it does not give the court the power to do both.

Far from being a power given in furtherance of the power to appoint an *ad litem*, the "other order" clause is a grant of discretion that enables the district court to protect the minor *without* appointing a guardian. That reading of rule 17(c) is not only plain on the face of the text, but is confirmed by our decisions[29] and those of other circuits.[30] A leading treatise

---

[29] *See, e.g., Roberts v. Ohio Cas. Ins. Co.* 256 F.2d 35, 39 (5th Cir. 1958) (providing that a district court should usually appoint an *ad litem*, but may instead "after weighing all the circumstances, issue such order as will protect the minor in lieu of appointment of a guardian ad litem . . . and may even decide that such appointment is unnecessary"); *Adelman ex rel. Adelman v. Graves*, 747 F.2d 986, 988-89 (5th Cir. 1984) (same).

[30] *See, e.g., Gardner by Gardner v. Parson,* 874 F.2d 131, 140 (3d Cir. 1989) (stating that "under Rule 17(c), a court may appoint a guardian, or it may decline to do so if the child's

on federal procedure succinctly explains that "the court may *either* appoint a guardian ad litem *or* 'make such other order as it deems proper for the protection of the infant or incompetent person.'" 4 JAMES W. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 17.21-[3][b] (Matthew Bender 3d ed.) (emphasis added). Because it is used only as an alternative to the appointment of a guardian *ad litem*, the "other order" clause provides the majority no cover.

In short, then, the majority purports to rely on "express statutory authority" for the taxation of *ad litem* fees. Instead, it relies only on an implied power that it creates and then reads into a provision of the rules that can be invoked only when an *ad litem* is *not* appointed.

## B.

The majority's first rationale is equally unconvincing in its discussion of the government's claim to sovereign immunity. Even assuming, *arguendo*, that *ad litem* fees may be taxed as costs under some combination of rules 17(c) and 54(d)(1), as the majority holds, those costs can not automatically be taxed against the government as the losing party in an action brought under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq*. This is because the FTCASSas it is cur-

---

interests may be protected in an alternative manner."); *Genesco, Inc. v. Cone Mills Corp*., 604 F.2d 281, 285 (4th Cir. 1979) (Rule 17(c) requires the court either to appoint a guardian "or take other equivalent protective action").

rently draftedSSdoes not waive the government's immunity from the taxation of costs and attorney's fees.

Rather, costs and attorneys' fees may only be taxed against the government to the extent that immunity is waived by the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. *See Sanchez v. Rowe*, 870 F.2d 291, 296 (5th Cir. 1989). The EAJA provides, in relevant part:

> Except as otherwise specifically provided by statute, a judgment for costs, as enumerated in section 1920 of this title, but not including the fees and expenses of attorneys, may be awarded to the prevailing party in any civil action brought by or against the United States.

§ 2412(a)(1). That language unambiguously provides that costs may be taxed against the United States only if they are among those enumerated in 28 U.S.C. § 1920. Although § 1920 lists a number of items of taxable costs, it says nothing about guardian *ad litem* fees.[31] As a result, even if the majority is correct in holding that *ad litem* fees may be taxed as

---

[31] I recognize that one of the majority's "alternative" holdings is that § 1920 enumerates guardian *ad litem* fees as a taxable cost. I refute that claim in part II. For present purposes, however, my discussion is focused only on the majority's first rationale, in which it posits that rule 17(c) specifically provides both that *ad litem* fees may be taxed as costs, and that they may be taxed against the government under § 2412(a)(1).

costs under rule 17(c), sovereign immunity has not been waived and the costs may not be taxed against the government. Thus, the district court's order taxing *ad litem* fees must be reversed.

To avoid this straightforward resultSSwhich is, evidently, so unpalatable to the majority that it will go to extraordinary lengths to avoid itSSthe majority takes two approaches. In the body of the opinion, it assesses sovereign immunity using the correct statute, but holds that "the inherent powers and responsibility under rule 17(c) to make such orders as the court deems proper also constitute the alternative express statutory authorization to tax guardian *ad litem* fees as costs to meet the requirements of § 2412(a)(1) and defeat any associated claim of sovereign immunity by the nonprevailing government in an FTCA case." Maj. Op. at 19, 25. In contrast, the majority's footnotes take a completely different approach and argue that immunity is waived by the terms of the FTCA itselfSSor rather, by the terms of the FTCA as it stood more than a half century ago. *See id.* at 19 n.11 & 25-26 n.15 (relying on language in 28 U.S.C. § 931(a) that was repealed in 1948).

There are several serious flaws in the majority's analysis. First, the majority mistakenly reads the opening phrase of § 2412(a)(1) as providing that there can be specific statutory exceptions to the definition of costs as used in the EAJA. Properly understood, that line provides something markedly different: that there are cases in which the government does not waive its immunity from the taxation of costs. Second, the court further mangles the English

36

language by finding that rule 17(c) contains an "express" waiver of immunity, despite recognizing that it does not "specifically state" anything to that effect. *Compare* Maj. Op. at 19; *with id.* at 18. Third, the court gives the federal rules an impermissibly broad mandate, and then, fourth, ignores words of limitation that provide for exceptions to § 2412(a)(1) only as specified by "statute." Finally, in what can only be seen as a concession that its analysis of § 2412(a)(1) fails to pass muster, the majority simply brushes that statute aside in preference for language that was removed from the FTCA in 1948 and has since been replaced by other statutes.

### 1.

To begin with, the entire premise of the majority's discussion of sovereign immunity is utterly flawed, because it is directed at proving that *ad litem* fees fit a non-existent exception to the EAJA. This is a minor point, however, so I will not belabor it.

The court claims to find, in rule 17(c), a specific statutory exception to § 2412(a)(1)'s limited waiver of immunity. Even if the court could show that its exception is both specific and located in a statuteSSsomething it cannot do, as explained in sub-parts 2 through 4, *infra*SSit would not support the conclusion reached by the majority.

The majority flatly misreads § 2412(a)(1)'s opening clause: "Except as otherwise specifically provided by statute." Properly understood, those words do not mean that there are instances in which costs may be awarded against the United States even though they are not specified in § 1920. To the contrary, the statute's definition of costs as being those items that are enumerated in § 1920, but not including attorney's fees, is absolute.

Instead, the phrase "Except as otherwise specifically provided by statute" only modifies the statement that "a judgment for costs . . . may be awarded to the prevailing party in any civil action brought by or against the United States." It provides that there may be instances in which costs are not recoverable against the United States, even though they are among those enumerated in § 1920 and are not attorneys fees.[32] The exception refers only to the subject and predicate of the sentence: the combined statement that a judgment for costs may be awarded against the United States. It does not create an exception to the definition of costs as items that are "enumerated in § 1920 of this title, but not including the fees and expenses of attorneys."

So, the majority's claim that it has identified a specific, statutorily grounded exception to § 2412(a)(1) is immaterial: any such exception can serve only to prevent the taxation of costs; it can not serve to permit the taxation of things

---

[32] *See also* G. Van Ingen, *Allowance of Fees for Guardian ad Litem Appointed for Infant Defendant, as Costs*, 30 A.L.R.2d 1148 § 1 (Whitney 2004) ("[T]he governing statutes or rules of court generally allow costs in favor of the prevailing party to the litigation. However, the statutes sometimes recognize the propriety of denying costs in favor of the prevailing party, under the proper circumstances.")

that are not costs.

## 2.

The court's second mistakeSSidentifying a putative exception to § 2412(a)(1) and calling it "specific"SSis far worse, and it is one that should by now seem familiar. Even assuming, *arguendo*, that the EAJA allows for exceptions to the definition of the word costs as used in § 2412(a)(1), rule 17(c) does not constitute a "specific" exception to the government's limited waiver of immunity.

The term "specifically" means "with exactness and precision : in a definite manner." WEBSTER'S THIRD NEW INT'L DICTIONARY 2187 (Merriam-Webster 1986). Again, because rule 17(c) says nothing at all about guardian *ad litem* fees, it does not "specifically provide" for a waiver of the government's immunity from their taxation.

Even if the "other order" clause in rule 17(c) is held out as the portion of the rule that provides for a waiver of immunity,[33] it fails to do so specifically. That clause only says generally that the court may make other orders; it says nothing specific about what those orders may be. It therefore provides no exception to § 2412(a)(1)'s general rule that costs may not be taxed against the government unless they are enumerated in § 1920.

This is not merely a question of the majority's ignoring the plain meaning of the word "specific" in its interpretation of § 2412(a)(1). Even absent the EAJA's express requirement that exceptions to its terms be "specific," the same result is dictated by "the traditional principle that the Government's consent to be sued must be construed strictly in favor of the sovereign, and not enlarge[d] . . . beyond what the language requires." *United States v. Nordic Village, Inc.*, 503 U.S. 30, 34 (1992) (internal quotations omitted). "Waivers of the Government's sovereign immunity, to be effective, must be unequivocally expressed." *Id.* (quotations omitted).[34]

No matter how much the majority tries to contort the meaning of rule 17(c), there is no sense in which it either "specifically," "explicitly," "expressly," "clearly," or "unequivocally" waives sovereign immunity from the taxation of *ad litem* fees as court costs. The majority takes the opposite to our ordinary approach and finds a waiver of immunity in a provision of the federal rules that is completely silent on the subject.

This impliedly-express waiver of sovereign immunity flunks even the most lenient understanding of the clear statement rule. Its presence in an en banc opinion can serve no purpose but to throw our entire sovereign immunity jurisprudence into chaos.

## 3.

---

[33] An unsupportable claim, for the reasons I discuss in part I.A.2, *supra*.

[34] *See also United States v. Williams*, 514 U.S. 527, 531 (1995) ("[W]e may not enlarge the waiver beyond the purview of the statutory language.")

38

The next flaw in the majority's analysis of sovereign immunity is its contention that rule 17(c) is a statute. *See* Maj. Op. at 19. The majority recognizes, of course, that even a specific waiver of immunity is ineffective as an exception to the EAJA unless it is "provided by statute." 28 U.S.C. § 2412(a)(1). The majoritySSciting only a single district court as authoritySSfinds that rule 17(c) fits this description.[35]

The federal rules are, of course, part of federal law, and we often give them the same effect as statutes.[36] The Rules Enabling Act even has an abrogation clause that provides "[a]ll laws in conflict with [the] rules shall be of no further force or effect after such rules have taken effect." 28 U.S.C. § 2072(b). So, to the extent the majority argues that the federal rules have "the imprimatur of Congress" such that they are considered laws, I fully agree. *See* Maj. Op. at 19.

Nevertheless, one of the critical differences

between the federal rules and statutes is that the former are restricted to certain limited topics. The Rules Enabling Act delegates authority to the Supreme Court only to "prescribe general rules of practice and procedure." 28 U.S.C. § 2072(a). Moreover, it specifically provides that "[s]uch rules shall not abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072(b).

The Rules Committee can no more validly waive the United States' sovereign immunity than this court can. It lacks the authority to speak on behalf of the United States in its capacity as a sovereign party to a lawsuit. If rule 17(c) said what the majority thinks it says, it would exist in violation of the limited grant of authority under which it was enacted.

The Supreme Court addressed this issue in *United States v. Sherwood*, 312 U.S. 584 (1941), and held:

> [N]othing in the new rules of civil practice . . . authorizes the maintenance of any suit against the United States to which it has not otherwise consented. An authority conferred upon a court to make rules of procedure for the exercise of its jurisdiction is not an authority to enlarge that jurisdiction and the Act of June 19, 1934 . . . authorizing this Court to prescribe rules of procedure in civil actions gave it no authority to modify, abridge or enlarge the substantive rights of litigants or to enlarge or diminish the jurisdiction of federal courts.

*Id.* at 589-90.

---

[35] *See* Maj. Op. at 18 (citing *ICG Communications, Inc. v. Allegiance Telecom*, 211 F.R.D. 610, 613 (N.D. Cal. 2002). The *ICG Communications* case does not even stand for the proposition attributed to it by the majority: that the term "statute" is synonymous with, or at least includes, the federal rules.

[36] *See, e.g., United States v. Wilson*, 306 F.3d 231, 236 (5th Cir. 2002) (finding that "Congress retains an integral, albeit passive, role in implementing any rules drafted by the Court," and that the federal rules can have the same operative effect as statutes).

The majority responds with a truism, observing that the federal rules apply to FTCA actions. *See* Maj. Op. at 19 n.11. Of course they doSSneither I nor the government contends otherwise. Indeed, if the federal rules did *not* apply to FTCA actions, our problems would be greater still, because the district court would have lacked authority even to appoint the guardian under rule 17(c), let alone to provide for his compensation. Either way, that contention is entirely beside the point, because the applicable rules not only fail to say that they waive the government's immunity, but they lack the capacity to do so in any event.

### 4.

There is still another problem with the majority's use of a federal rule to effect a waiver of immunity. Again, conceding that the rules apply to FTCA cases, and assuming for the moment that the rules are capable of waiving the government's immunity, there remains the problem of whether the rules fit the majority's identified exception to § 2412(a)(1). The majority ignores the fact that Congress chose only to use the word "statute," and not "rule," when it provided that there may be exceptions to the EAJA. Federal law is rife with instances in which the two terms are held out as independent legal concepts.[37] They have inde

pendent meanings, and as a result I cannot read Congress's choice of the the word "statute" in § 2412(a)(1) as including both traditional statutes and the federal rules. Rather, Congress's use of the word "statute" signals a conscious decision to limit the sphere of possible exceptions to the EAJA to laws drafted by Congress and signed by the President.

Even rule 54(d)(1)SSan interpretation of which is ostensibly at the heart of the majority's opinionSSdistinguishes between the two terms: "Except when express provision therefor is made either in a statute of the United States or in these rules . . . ." FED. R. CIV. P. 54(d)(1). That choice of words is almost identical to the first line of § 2412(a)(1), but for one omission: The EAJA permits exceptions only "as otherwise specifically provided by statute." 28 U.S.C. § 2412(a)(1).[38]

---

[37] *See, e.g., Crawford-El v. Britton*, 523 U.S. 574, 594 (1998) (stating that "[n]either the text of § 1983 or any other federal statute, nor the Federal Rules of Civil Procedure, provide . . ."); *Jackson v. Stinnett*, 102 F.3d 132, 134 (5th Cir. 1996) (discussing the Rules Enabling Act and find-

ing that "[a]lthough Congress has authorized the Court to exercise some legislative authority to regulate the courts . . . [it] may at any time amend or abridge by statute the Federal Rules of Civil Procedure . . . or other federal procedural rules promulgated under the Rules Enabling Act") (internal citations omitted).

[38] Rule 11 is similar to rule 54 in that it also distinguishes between the terms "rule" and "statute." It provides that pleadings need not be verified by affidavit "[e]xcept when otherwise specifically provided by rule or statute." FED. R. CIV. P. 11(a). Similarly, the Federal Rules of Bankruptcy Procedure provide that "[t]he court may allow costs to the prevailing party except when a statute of the United States or these rules otherwise provides." FED. R. BANKR. P. 7054(b).

If Congress had wished, it could have provided that exceptions to the EAJA may be "specifically provided by statute or rule," just as the Rules Committee provided when drafting rule 54. It did not, however, and as a result this court cannot hold out rule 17(c) as the source for an exception to the EAJA.

For those reasons, rule 17(c) does not waive the government's immunity from the taxation of costs that are not enumerated in 28 U.S.C. § 1920. Not only does rule 17(c) fail "specifically [to] provide" an exception to § 2412(a)(1), it is also not a statute, and it was promulgated under a grant of authority that does not include the power to waive the government's *substantive* right to be free from suit.

### 5.

Finally, there is the majority's claim that the FTCA, rather than § 2412(a)(1), is the relevant statute for purposes of assessing sovereign immunity. *See* Maj. Op. at 19 n.11, 25 n.15.[39]

---

The Federal Rules of Criminal Procedure also distinguish between themselves and statutes, providing that "[e]xcept as otherwise provided by a statute or these rules, the court must not permit the taking of photographs in the courtroom during judicial proceedings." FED. R. CRIM. P. 53.

[39] That is a strange position for the majority to take, because the portions of the text to which those footnotes correspond discuss sovereign immunity in the context of the correct statute, § 2412(a)(1), not the FTCA. *See* Maj. Op. at 19, 25. The majority's footnotes in no way clarify the manner in which rule 17(c) provides a specific

That is indeed a tough claim to make, given that the FTCA's waiver of immunity speaks only in terms of "tort claims,"[40] and there is a separate statute that has no purpose other than to specify the terms on which costs may be taxed against the government. *Compare* 28 U.S.C. § 2674, *with* § 2412(a)(1). "It is an elementary tenet of statutory construction that '[w]here there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one.'" *Guidry v. Sheet Metal Workers Nat'l Pension Fund*, 493 U.S. 365, 375 (1990) (quoting *Morton v. Mancari*, 417 U.S. 535, 550-51 (1974)). Because § 2412 is by far the more specific statute on the topic of the government's liability for costs, it controls over any inferences that may be drawn from § 2674's broad statement to the effect that the government is liable for "tort

---

exception to § 2412(a)(1)'s limited waiver of immunity; instead, they serve only further to muddy the waters. If the footnotes are correct, the discussion in the body of the majority opinion is wholly extraneous. At best, therefore, those footnotes constitute but another "alternative" holding that can have no purpose except to provide false comfort to a majority that is already well aware of the dearth of support for its position.

[40] No one disputes that the government was not immune from the Gaddises' underlying tort claim, and even the majority cannot bring itself to assert that the guardian's request for fees constitutes a "tort claim" against the United States. Instead, the issue is only whether the waiver of immunity with respect to the Gaddises' claim also encompasses litigation costs incurred in the course of trial.

claims" on the same terms as other parties.

To refine its view of the FTCA into a statement that might reasonably control the specific terms of § 2412(a)(1), the majority points to language that was removed from the FTCA in 1948. *See* Maj. Op. at 25-26 n.15. Relying on *United States v. Yellow Cab*, 340 U.S. 543, 547 n.4 (1951), the majority then argues that the current version of the FTCA should be read as continuing to carry out the policies of the repealed statute 28 U.S.C. § 931(a) (1946) (quoted in *Yellow Cab*, 340 U.S. at 547 n.4.).

The majority reads far too much into *Yellow Cab*, which specified that it was reading the old and new statutes as being consistent with one another because the provisions material to its dispute had been largely reenacted in § 2674, with only minor changes in "phraseology." *Id.* In contrast, the provisions relevant to the present dispute were not reenacted in the FTCA in any form. *Yellow Cab* therefore provides no basis for the majority's conclusion that we are bound by repealed language that supposedly undergirds § 2674, rather than the plain (and valid) language of § 2412(a)(1).

Even if *Yellow Cab* were not distinguishable on that basis, it still would not provide support for the majority's analysis. *Yellow Cab* was decided a mere three years after the FTCA's revision, and the Court needed only to reconcile the pre- and post-amendment versions of the same statute. Half a century later, however, we are required also to consider the significance of the statutes Congress has enacted in the intervening years:

At the time a statute is enacted, it may have a range of plausible meanings. Over time, however, subsequent acts can shape or focus those meanings. The "classic judicial task of reconciling many laws enacted over time, and getting them to 'make sense' in combination, necessarily assumes that the implications of a statute may be altered by the implications of a later statute." *United States v. Fausto*, 484 U.S. [439, 453 (1988)]. This is particularly so where the scope of the earlier statute is broad but the subsequent statutes more specifically address the topic at hand. As we recognized recently in *United States v. Estate of Romani*, [523 U.S. 517, 530-31 (1998),] "a specific policy embodied in a later federal statute should control our construction of the [earlier] statute, even though it ha[s] not been expressly amended."

*Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 143 (2000).

Even if *Yellow Cab* requires us to assume that the post-amendment FTCA originally applied to the taxation of costs, we would still be required to challenge that assumption when it became inconsistent with intervening statutes. Because Congress drafted a new statute that directly addresses the subject of costs, we cannot just ignore it in preference for language that was repealed in 1948.[41]

---

[41] It is also beyond cavil that the EAJA generally applies to tort suits against the government. One subsection of the act, § 2412(d)(1)(A), specifically exempts tort cases from

42

The irony in the majority's position is that that position is likely to end up being even more favorable to the government than the one I am advocating. Applying the court's holding to a far more common problemSSa request for the payment of attorney's feesSSit must also be the case that § 2674 of the FTCA continues to embody the relevant provisions of the old statute, § 931(a). That statute flatly prohibited courts from awarding attorney's fees against the government in a tort case. *See Yellow Cab*, 340 U.S. at 547 n.4. The EAJA purports to soften that restriction by allowing an award of attorney's fees in some tort cases under § 2412(b), *see, e.g., Stive v. United States*, 366 F.3d 520, 521 (7th Cir. 2004), while still refusing to *require* that they be imposed, even in cases where the government takes an unjustified position, *see* § 2412(d)(1)(A).

Under the majority's holding, courts will be required to look to the repealed language of § 931(a), and not to § 2412, to determine whether attorney's fees may be allowed against the government in an FTCA case. Because § 931(a) prohibits those awards in *all* tort cases, the majority's holding ultimately will inure to the great detriment of plaintiffs seeking redress for government wrongs.

---

the provision that mandates an award of attorney's fees against the government when it takes an unreasonable position at trial. No such exception would be necessary if the EAJA did not otherwise apply to tort claims brought against the government.

The majority cannot so simply escape the limitations imposed on the waiver of sovereign immunity. Because guardian *ad litem* fees are not listed in § 1920, they do not fit within § 2412(a)(1)'s requirements. We should reverse on this basis as well.

C.

Finally, even if the majority correctly holds that *ad litem* fees may be taxed against the government under rule 17(c), it errs in merely affirming rather than remanding. A remand is appropriate, because the district court used rule 54(d)(1), not rule 17(c), as the basis for its order taxing *ad litem* costs.

The majority's own opinion provides district courts the authority to determine

> [w]hether the compensation payable to the guardian ad litem will be treated (1) as a court cost to be taxable against the nonprevailing party or (2) as an expense to be payable out of any funds recovered by or payable to the minor or incompetent person on whose behalf the guardian ad litem was appointed.

Maj. Op. at 20. In so doing, the opinion arms district courts with a level of discretion in applying rule 17(c) that is more akin to that found in rule 53(h)(2) than in rule 54(d)(1). The court need not tax the full amount of the costs against the losing party, as rule 54(d) would require, but instead may allocate the burden among the parties in the manner it finds most equitable.

Nevertheless, by affirming instead of re-

manding, the majority denies this discretion to the very court for which it was created: the district court in the instant case. There is no doubt that the district court relied exclusively on rule 54(d) in crafting its order taxing costs against the government: This court's decisions unambiguously have held that the power to tax *ad litem* fees derived from rule 54(d);[42] the *ad litem* moved to have his fees taxed against the government as costs pursuant to rule 54(d); and the district court approved the order in reliance on our *duPont* line of cases.

The district court had no idea that it was empowered to distribute the burden of the *ad litem*'s fees on any party other than the government. Nor could it have: Today's decision is the first to provide that the power to tax costs stems from rule 17(c), not rule 54(d). Had the district court known of this power, it may well have found it more equitable to require the minor, for whom the *ad litem* was appointed, to apply some portion of his $4,083,103.66 recovery toward the *ad litem*'s $46,299 fee.

"When law changes in unanticipated ways during an appeal . . . this court will generally remand for a new trial to give parties the benefit of the new law and the opportunity to present evidence relevant to that new standard." *Deffenbaugh-Williams v. Wal-Mart Stores, Inc.*, 188 F.3d 278, 282 (5th Cir. 1999). "The

---

[42] *See, e.g., duPont*, 771 F.2d at 882 ("As an officer of the court, the expenses of a guardian ad litem are properly taxable as costs pursuant to Fed. R. Civ. P. 54(d).").

motivation of this rule is fairness: to prevent injustice to a party who had no reason to expect a changed rule at the time of trial." *Id.*

Even accepting the majority's eminently flawed opinion that *ad litem* fees may be taxed as costs under rule 17(c), the appropriate remedy is to remand so that the district court can apply its newly-created powers under rule 17(c) to determine the most equitable means of allocating the *ad litem*'s fees among the parties as it sees fit.

## II.

The majority also affirms on the "alternative" ground that a court appointed guardian *ad litem* is one of the items of taxable costs enumerated by Congress in 28 U.S.C. § 1920. Specifically, the majority finds that guardians *ad litem* are court appointed experts under § 1920(6).

It is notable that the majority repeatedly defends its view as "reasonable," but never as correct. *See* Maj. Op. at 20, 23, 24. That reluctance is not particularly surprising: Even the plaintiffs concede that the majority's reading is incorrect, and they disavow any reliance on it. That concession ordinarily would keep this court from even entertaining the argument, because a "party's concession of an issue means the issue is waived and may not be revived." *Smith v. United States*, 328 F.3d 760, 770 (5th Cir. 2003).

But even if one joins the majority in ignoring the appellees' concession, the majority's first "alternative" holding is manifestly erroneous, both as an interpretation of the statute

and as an application of that statute to the facts of this case. The majority's strained reading of the text also violates the maxim that we construe waivers of sovereign immunity narrowly and in favor of the sovereign.

## A.

This court interprets statutes according to their plain meanings. *Conn. Bank of Commerce v. Republic of Congo*, 309 F.3d 240, 260 (5th Cir. 2002). "In determining a statute's plain meaning, we assume that, absent any contrary definition, 'Congress intends the words in its enactments to carry their ordinary, contemporary, common meaning.'" *In re Greenway*, 71 F.3d 1177, 1179 (5th Cir. 1996) (quoting *Pioneer Inv. Serv. v. Brunswick Assoc.*, 507 U.S. 380, 388 (1993)) (internal quotation marks omitted).

The plain meaning of the phrase "court appointed experts" in § 1920(6) is that it is a reference to experts appointed under Federal Rule of Evidence 706. The rule likewise is titled "Court Appointed Experts," and courts consistently refer to individuals appointed under that rule by the same name. In addition to this common usage, the term "court appointed expert" is in fact defined as synonymous with "impartial expert. An expert who is appointed by the court to present an unbiased opinion . . . . FED. R. EVID. 706." BLACK'S LAW DICTIONARY 600 (7th ed. 1999).

This view is reinforced by legislative history. The House Committee report provides that § 1920(6) is an "express reference to the taxation of the compensation of a court appointed expert, as permitted by Rule 706 of the Federal Rules of Evidence."[43] H.R. Rep. No. 95-1687, 95th Cong., 2d Sess. 13, reprinted in 1978 U.S.C.C.A.N. 4652, 4664. As a result, the plain meaning of "court appointed experts," as used in § 1920(6), is a specific reference to experts appointed under rule 706 and does not include guardians *ad litem* appointed under rule 17(c). *Cf.* FED. R. EVID. 706; FED. R. CIV. P. 17(c).

In contrast, the court posits that guardians *ad litem* fit the ordinary, contemporary, and common meaning of the term "court appointed expert," just because they "liaise with the court and are charged with the important duty of providing their insight as to how the judicial process is or is not comporting with the best interests of the minor." Maj. Op. at 24. That claim is unconvincing, for the same vague description could be applied to a number of parties that § 1920 otherwise references by name.

For example, interpreters are selected and appointed by the "presiding judicial officer" at trial, and there is no question but that they apply their skills toward a discrete task that is

---

[43] The majority dismisses that statement in a footnote, arguing that the inclusion of "court appointed experts" in § 1920 was such an afterthought that any explanation for its inclusion is presumptively unreliable. *See* Maj. Op. at 24-25 n.13. That observation leads, however, to the inverse of the majority's conclusion. If indeed Congress paid little heed to its decision to include the fees of court appointed experts in § 1920, it is far more likely that the term is used in a familiar, as opposed to novel, way.

essential to fair judicial administration. *Cf.* 28 U.S.C. § 1827. The same is true of court reporters. Federal law provides that "[e]ach district court of the United States . . . shall appoint one or more court reporters," 28 U.S.C. § 753, and theirs is certainly a unique skill that is applied to a discrete problem in trial management.

Yet, despite the "expert" status of reporters and interpreters under the majority's new rule, their fees receive individualized mention in § 1920(2) and (6). The majority's reasoning therefore ignores the maxim that courts should avoid an interpretation of a statute that "renders some words altogether redundant." *Gustafson*, 513 U.S. at 574.[44]

Accordingly, it takes something more than a court appointment and responsibility over an "important duty" to qualify as a court appointed expert within the meaning of § 1920(6). In this regard, it is telling that an *ad litem* need not even be an expert to qualify for appointment under rule 17(c).

"Qualification cannot occur in guardian ad litem situations because no recognized area of general expertise with regard to 'custody' or 'child placement' exists." R. Lidman & B. Hollingsworth, *The Guardian ad Litem in Child Custody Cases: the Contours of Our Judicial System Stretched Beyond Recogni-*

*tion*, 6 GEO. MASON L. REV. 255, 275 (1998). No matter how valuable are the skills possessed by an *ad litem*, the legal system does not generally refer to them as "experts."

I cannot presume that the lone exception to this practice is Congress's choice of the phrase "court appointed experts" in § 1920(6), a phrase that has a far more naturalSSand limitedSSconnotation as a reference to rule 706 experts.[45] However valuable or important the duties of an *ad litem* are, they do not automatically make someone appointed to perform that function a "court appointed expert."

The majority's interpretation also violates the interpretive canon that "where general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." *Wash. State Dep't of Social & Health Servs v. Guardianship Estate of Keffeler*, 537 U.S. 371, 384 (2003). Section 1920 is quite specific in providing for the taxation of costs incurred by a particular individual: The clerk, marshals, court reporters and interpreters are all specifically provided for. Moreover, these descriptions refer to the officials' job titles, not merely to the attributes they bring to that positionSSthe list is, in other words, taxonomical, not descriptive.

---

[44] The majority also sweeps into its fold masters appointed under rule 53, even though the rules independently provide a means for their compensation. *See* FED. R. CIV. P. 53(h).

[45] At oral argument, the *ad litem* disclosed that this was his first time serving in that capacity. That he did so competently only underscores the fact that an *ad litem* can be a relative novice, and yet still satisfy all the requirements of the job.

46

Against that backdrop, the ordinary presumption is that the phrase "court appointed expert" is a similarly specific reference to the title of a court official, not a broad description of the skill set possessed by an individual who serves the court. It means the very persons who ordinarily would be referred to as "court appointed experts," not those who were appointed by the court and generally could be described as possessing some measure of expertise. Because rule 706 experts ordinarily are referred to as "court appointed experts," they fit within the statute; guardians *ad litem* appointed under rule 17(c) do not. *Cf.* FED. R. EVID. 706; FED. R. CIV. P. 17(c).

### B.

Even if the majority correctly holds that guardians *ad litem* could be "experts" within the meaning of § 1920(6), it would be absurd to apply that holding to the present case. I do not mean to denigrate the services of the *ad litem* in this case, who, by all accounts, performed his job competently and diligently. Nevertheless, the circumstances of his appointment as an *ad litem* fall far short of anything resembling the qualification and appointment of an expert.

The Gaddises originally moved for the appointment of an *ad litem* and recommended that this person be designated to serve in that capacity. Their summation of his qualifications reads, in its entirety:

> Plaintiffs would respectfully request that attorney George Bean be appointed as Ad Litem for the Minor. Mr Bean is familiar with the general facts of the case and has

expressed his willingness to serve as ad litem pending approval by the Court.

The possession of a general familiarity with a subject, and a willingness to serve, do not make someone an expert in that field. Because this particular *ad litem* possessed no expertise and was not appointed to be an expert, there is no basis for the majority's conclusion that his fees may be taxed against an adverse party on the theory that they are costs incurred by an "expert."

### C.

The majority asserts that this "alternative" holding exists free and clear of any sovereign immunity concerns, because a finding that guardians *ad litem* are enumerated within § 1920 is tantamount to a finding that the government has waived its immunity in § 2412(a)(1) . *See* Maj. Op. at 25. That is only half right. The court is correct to note that the EAJA waives immunity for those items that are "enumerated in section 1920." 28 U.S.C. § 2412(a)(1). But, what the majority fails to acknowledge is that its opinion is as much an interpretation of § 2412(a)(1) as it is of § 1920. This is because the majority must identify the meaning of the words "as enumerated in section 1920" before finding that the government has waived its immunity for the taxation of costs.

As a result, the majority's view that it can adopt any possible interpretation of § 1920, no matter how strained or tenuous, violates the maxim that waivers of immunity are not to be enlarged "beyond what the language requires." *Nordic Village*, 503 U.S. at 34; *Williams*, 514

U.S. at 531. Even if it is *possible* to interpret § 1920 in the manner adopted by the majoritySSbecause nothing in the statute conclusively forecloses its viewSSthat is not enough. There is nothing in either § 1920 or § 2412-(a)(1) that even comes close to compelling the majority's view that the government has waived its immunity from the taxation of guardian *ad litem* fees as costs.

### III.

I now come to the majority's third, and final, explanation for its self-described "fair and proper" result. Maj. Op. at 29. In this next "alternative" version of its holding, the majority throws all prior arguments out the window, and holds that the case is much ado about nothing. Because we have previously reached the same result without considering the arguments presented by the government in this appeal, we have obviously rejected them, says the majority, so we shouldn't waste time today considering their merits.[46]

The logic of that approach is overwhelming. Surely it is not better that we leave the tough questions to a three-judge panel that did not consider the question, than to the collective wisdom of sixteen judges who have the benefit of having the issued briefed and orally argued. The majority's approach serves no purpose but to absolve the en banc court of the responsibility for reaching the relatively obvious, if unpalatable, conclusion that the government's position is the correct one.

This final "alternative" holding rests on the proposition that *Crawford Fitting* is inapposite to the question whether guardian *ad litem* fees may be taxed as costs. To reach its conclusion, the majority first observes that we have favorably cited the *duPont* line of cases for several years after *Crawford Fitting* and thereby have upheld the right of district courts to tax *ad litem* fees as costs under rule 54-(d)(1). *See* Maj. Op. at 26 & n.16.

Further, the majority reasons, *Crawford Fitting* has no relevance to the present dispute, because "[n]either the term 'guardian ad litem' nor the phrase 'guardian ad litem fees' appears anywhere in the Supreme Court's decision in *Crawford Fitting*." *Id.* at 28. Lastly, the majority reasons, there are a variety of states in which "state courts applying their respective state statutes" have found that *ad litem* fees are taxable items of cost; as a result, federal statutes must provide for the same result. *Id.*

The only inference to be drawn from the fact that our recent cases have taxed *ad litem* fees without mentioning *Crawford Fitting*, is that the parties in those cases did not make the same argument that the government has put forward here. Because *Dickerson*, 280 F.3d at 478; *Lebron*, 279 F.3d at 332; and *Gibbs*, 210 F.3d at 506, make no mention of *Crawford Fitting*, they do not stand for the proposition

---

[46] *See Dickerson v. United States*, 280 F.3d 470, 478 (5th Cir. 2002); *Lebron v. United States*, 279 F.3d 321, 332 (5th Cir. 2002); *Gibbs v. Gibbs*, 210 F.3d 491, 506 (5th Cir. 2000). Those cases rely entirely on *duPont*, and they neither discuss the potential impact of *Crawford Fitting* on *duPont* nor address the issues raised in today's opinion.

that the government's arguments based upon that case are without merit. To the contrary, the only significance of those cases is that they bound the original panel in this case to a result that could not be squared with *Crawford Fitting*. In other words, we took this case en banc to consider whether those decisions are in error; it is an insufficient answer merely to observe that those panels reached a decision.

Likewise, there is no significance to the fact that *Crawford Fitting* fails to mention the term "guardian *ad litem*." This is because the case creates a rule of exclusion, not inclusion. In *Crawford Fitting*, the Court specifically rejected the view that "§ 1920 does not preclude taxation of costs above and beyond the items listed," as well as the view that "Rule 54(d) is a separate source of power to tax as costs expenses not enumerated in § 1920." *Crawford Fitting*, 482 U.S. at 441.

Instead it held, in no uncertain terms, that costs are taxable under rule 54(d) only if they are among those items that Congress specifically enumerated in 28 U.S.C. § 1920. Indeed, "§ 1920 defines the term 'costs' as used in rule 54(d)," and "no reasonable reading of these provisions together can lead to [the] conclusion" that items of cost may be taxed even though they are not enumerated in § 1920.[47]

*Id.* That the Court reached this result in the context of finding that expert witness fees may not be taxed above the amount specified in 28 U.S.C. §§ 1920 and 1821(b) is of no moment. If the Court instructs lower courts that they may tax only the six items listed in § 1920, and then holds that they may not tax a seventh item, we are bound to apply that decision to say "nor this eighth, nor this ninth, nor this tenth item either."

Outside the guardian *ad litem* context, we have applied *Crawford Fitting* to hold that a federal district court may not tax, as costs, expenses incurred in preparing videotaped depositions, because that item is not found in § 1920's list. *Mota v. Univ. of Tex. Houston Health Science Ctr.*, 261 F.3d 512, 529-30 (5th Cir. 2001). Likewise, video technician fees are not taxable under § 1920, nor are the production of 'blow-ups' of exhibits. *Coats v. Penrod Drilling Corp.*, 5 F.3d 877, 891 (5th Cir. 1993). In the closest analogy to the present case, we held that a mediator's fees are not covered by § 1920 either and, as a result, may not be taxed as costs in the wake of *Crawford Fitting*. *Mota*, 261 F.3d at 530.[48]

The majority also errs in claiming that its conclusion is reinforced by the practice in state courts. Its own citations reveal that *ad litem*

---

[47] Any doubt concerning that result is removed by the subsequent statement, in *W. Va. Univ. Hosp., Inc. v. Casey*, 499 U.S. 83, 86 (1991), that in *Crawford Fitting* the Court "held that [§§ 1920 and 1821] define the full extent of a federal court's power to shift litigation costs absent

express statutory authority to go further."

[48] *See also Brisco-Wade v. Carnahan*, 297 F.3d 781, 782 (8th Cir. 2002) (holding that § 1920 does not authorize taxing mediation fees as costs).

fees are taxable costs in those states only because state statutes or procedural rules specifically provide for that result in a way that the federal rules and statutes do not.

As I have already shown, the Alabama, Mississippi, North Carolina, Tennessee, and Texas procedural rules contain specific provisions stating that *ad litem* fees may be taxed as costs. In addition, the majority relies on several state statutes, evidently in the hope that they will compare favorably to § 1920. They do not. The Illinois statute cited by the majority provides: "A guardian ad litem or special administrator is entitled to such reasonable compensation as may be fixed by the court to be taxed as costs in the proceedings and paid in due course of administration." 755 ILL. COMP. STAT. ANN. 5/27-4 (West 2004). Similarly, the Michigan statute relied on by the majority provides: "The guardian ad litem may be allowed reasonable compensation by the court appointing him, to be paid and taxed as a cost of the proceedings as directed by the court." MICH. COMP. LAWS ANN. § 600.-2045(2) (West 2004).

All of these states expressly provide for the compensation of guardians *ad litem* as a taxable court cost, something federal law flatly does not do. "[I]t is a general rule that in actions at law, as distinguished from suits in equity, costs may not be allowed in the absence of statute or rule of court authorizing such relief." Van Ingen, *supra*, 30 A.L.R.2d 1148 § 2. "[I]n many jurisdictions the courts have been expressly authorized by statute to tax as costs fees for the services of guardians ad litem." *Id.*

It is up to Congress to decide whether guardian *ad litem* fees may be taxed as costs. In its present form, the statute Congress enacted to address that topic fails to enumerate guardian *ad litem* fees as a taxable item of cost, and, as a result, *ad litem* fees may not be taxed under rule 54(d), any more than can the expenses disallowed in *Mota*, *Coats*, and *Brisco-Wade*. If Congress chooses, it can fix this result by amending § 1920; unless and until it does so, *Crawford Fitting* precludes district courts from taxing guardian *ad litem* fees.

Although I will not repeat all the arguments I make in part I.B, *supra*, sovereign immunity also bars the result advocated by the majority in this "alternative" holding. This would be so even if *Crawford Fitting* had never been decided, or had been decided in a manner consistent with that case's dissenting opinion and today's majority opinion. Regardless of the courts' power to tax costs under rule 54(d)(1), the government has waived its immunity from costs only as enumerated in § 1920. *See* 28 U.S.C. § 2412(a)(1).

IV.

One sentence in the majority opinion sums up the real reason for its decision to affirm the district court:

While we recognize the underlying treatment the Supreme Court gave to the interplay between Rule 54(d) and § 1920 in *Crawford Fitting*, *we are reluctant to and thus do not* apply any such proscription

here to the taxation of guardian ad litem fees as costs . . . .

Maj. Op. at 26 (emphasis added).  Reluctance to reach a result the majority perceives as un-palatable is no excuse for ignoring controlling Supreme Court precedent or for re-writing rules and statutes.  Those powers properly lie with others.  I therefore respectfully dissent.